IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MARIA STOCHEL, et al. | CIVIL ACTION |
|---|---|
| v. | NO. 15-231 |
| ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY | |

MEMORANDUM

Baylson, J.                                                                                              December 9, 2015

### I.      Introduction

Two motions are presently pending before the Court: Defendant's Daubert Motion to Preclude (1) Jay B. Rosen's Supplemental Report and (2) the April 17, 2015 Estimate and Testimony of Walter Clark (ECF 23), as well as Defendant's Motion for Summary Judgment (ECF 24). For the reasons that follow, the Court will grant the Motion to Preclude in part and deny the Motion for Summary Judgment.

### II.     Factual Background

The facts of this insurance coverage case are largely undisputed. On February 19, 2014, Plaintiffs Maria Stochel and Eugene Nowakowski suffered damage to their home following a water main break. ECF 24-2 ¶ 1. At the time of the break, Plaintiffs maintained a homeowners' insurance policy with Defendant Allstate that excludes coverage for flood or groundwater damage. Allstate accordingly denied Plaintiffs' February 21, 2014 insurance claim for water damage from the break. ECF 24-2 ¶¶ 2-8.

1

On August 20, 2014, Plaintiffs filed a second claim with Allstate alleging that the City of Philadelphia's efforts to repair the water main had caused vibration damage to the property. ECF 24-2 ¶¶ 9-11.  The parties appear to agree that this vibration damage, if proven, would be covered under the insurance policy.  See ECF 27 Def. Resp. to PSOF ¶ 15; see also ECF 24-11 Def. Ex. F at 7 (covering all sudden and accidental physical loss).

### A. Rosen's Expert Reports

On September 23, 2014, Allstate inspected Plaintiffs' residence.  Present were Allstate's field adjuster Gerald Povacz, Allstate's structural engineer Sinan Jawad, and Plaintiffs' engineer Jay B. Rosen.  ECF 24-2 ¶¶ 12-15, 32-33.  On September 29, 2014, Jawad issued a report concluding that there was no damage to Plaintiffs' home caused by vibration.  ECF 24-2 ¶¶ 19-21.

On September 30, 2014, Rosen issued a report.  ECF 24-2 ¶ 35.  Rosen concluded that "the house was damaged due to the forces that occurred during the water main breakage and subsequent flooding.  The flooding resulted in saturation of the lower levels of the structure and damage to the existing foundation and exterior walls."  ECF 24-2 ¶ 36.

On February 26, 2015, Rosen issued a supplemental report without re-inspecting the property.  ECF 24-2 ¶¶ 34, 38-39.  The supplement clarified that "[a]s per my original report, the damage that occurred due to the water main break is attributable to the initial flooding and [sic] well as vibration due to the equipment used to reconstruct the main."  ECF 24-23 Def. Ex. R.  The parties hotly dispute whether Rosen's February 2015 supplement altered the September 2014 report: Defendant contends that Rosen's initial report made no mention of damage to the property as a result of vibrations from heavy equipment and attributed all costs to flooding.  ECF 24-2 ¶¶ 37, 40; ECF 27 Def. Resp. to PSOF ¶ 8.  Plaintiffs counter that Rosen's initial report

made factual assertions consistent with vibration damage such that his supplemental report merely clarified any ambiguity. ECF 26-2 Pl. Resp. to DSOF ¶¶ 37, 40; PSOF ¶ 8.

Rosen's supplemental report also posited for the first time that "[w]hile it is difficult to separate the causes to individual damage, it is my professional opinion that the flood line or high water line can be used as a division for a demarcation of cause. In other words, damage below the high water line is due to the water main break, and damage above the high water line is due to vibration. While overlap does exist, this provides a bright line break in causation." ECF 24-2 ¶ 36.

During his deposition, Rosen repeatedly emphasized that it is difficult to separate damage caused by water from damage caused by vibration. He could not provide a scientific basis for his conclusion about the water line as causal boundary. ECF 24-2 ¶¶ 42-43; ECF 24-22 Def. Ex. Q (Rosen Dep.) at:

1. 104:5-14 ("Q: Why did you go about preparing this [supplemental] report? A: Again, for the same reason. That I believe everyone was trying to separate out the individual causes to it, *and really what I'm doing is I'm hedging here.* I'm telling you I'm not really completely positive everything plays in here, but ultimately, based on my experience, that the water line tends to be the demarcation. It provides a bright line for people to understand.");

2. 105:14-106:6 ("[Q]: Now, do you stand behind that opinion with a reasonable degree of engineering certainty. A: I would say it can be used as a bright line. If I had to pick a bright line, what I'm saying here in this report is that's where I'm going to pick it to be. *Engineering certainty the answer to that is, I would probably say no to that* . . . Very difficult to sort it out other than, like, doing a major testing program that is

probably going to cost more than this claim is worth. . . . ***I would say it is more of an opinion than an engineering certainty.***");

3. 106:24-107:2 ("I can't tell you specifically. ***I can't say this is a vibration crack and this is a flooding crack, I can't do that.***").

### B. Clark

On April 17, 2015, after this litigation had commenced as outlined below, Allstate conducted a second inspection of Plaintiffs' property. Present were Allstate's structural engineer Gary Popolizio and an estimator working for the Plaintiffs named Walter Clark. ECF 24-2 ¶¶ 26-27, 44, 46.

Clark prepared interior and exterior damage estimates. ECF 24-2 ¶¶ 44-55. Clark relied on Rosen's initial September 2014 report, conversations with the Plaintiffs, and a visual inspection in making his estimates. Id. He used Xactimate software, which compiles published "unit prices" for replacement items, in coming to his conclusions. ECF 26-2 (PSOF) ¶ 13. Clark assumed that all damage to the exterior was attributable to vibration damage while all damage to the interior was caused by flooding. Id. at Resp. to DSOF 53.

### C. Procedural History

On October 2, 2014, Allstate denied Plaintiffs' vibration claim on grounds that damage to the property resulted from earth movement, not vibration. ECF 24-2 ¶¶ 22-25. On December 16, 2014, Plaintiffs filed suit in the Philadelphia County Court of Common Pleas. ECF 1 ¶ 1. Allstate removed the action to this Court on January 20, 2015 on the basis of diversity jurisdiction as more than $75,000 is in controversy, Allstate is incorporated in and has its principle place of business in Illinois, and Plaintiffs are domiciled in Pennsylvania. ECF 1; 28

U.S.C. § 1332 (2015).  Defendant filed both Motions on October 30, and they are now ripe for adjudication.

   **III.   Analysis**

   **A.  Motion to Preclude**

"Rule 702 has two major requirements. The first is that a witness proffered to testify to specialized knowledge must be an expert . . . . The second requirement of Rule 702 is that the expert must testify to scientific, technical or other specialized knowledge [that] will assist the trier of fact[, meaning] that an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable."  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-42 (3d Cir. 1994) (citations omitted).[1]

In this case, Defendant has not argued that Plaintiffs failed to produce qualified experts. Rosen has a Bachelor and Master of Science in Civil Engineering, two decades of experience in the field, and Professional Engineer licenses in nine states.  ECF 25-4 Pl. Opp. Ex. D.  Clark similarly has worked in the field as a claims estimator since 2008.  ECF 25-9 Pl. Opp. Ex. I.

A far thornier issue, however, concerns whether Rosen's February 2015 supplemental report and Clark's damages estimate resulted from reliable processes.  Determining whether an expert report is reliable is a "flexible" inquiry that can consider the following non-exhaustive list of factors: "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established

---

[1] The Third Circuit has also noted that "[i]n addition to reliability, Rule 702 requires that the expert's testimony must assist the trier of fact," meaning that 702's reliability requirement "extends to each step in an expert's analysis all the way through the step that connects the work of the expert to the particular case."  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742-43 (3d Cir. 1994).

to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." Pineda v. Ford Motor Co., 520 F.3d 237, 247-48 (3d Cir. 2008) (citations omitted). However, "[a]n expert's opinion must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation." Oddi v. Ford Motor Co., 234 F.3d 136, 158 (3d Cir. 2000) (citing In re Paoli R.R. Yard, 35 F.3d at 742).

One portion of Rosen's February 2015 report, in which Rosen claims that the water line provides a way to demarcate damage caused from flooding from damage caused by vibrations, fails to meet the reliability standards outlined above. See id. at 156-58 (criticizing an expert's "haphazard, intuitive inquiry" that "used little, if any, methodology beyond his own intuition" and that did not allow for standards or an error rate). As noted, Rosen testified repeatedly during his deposition that he was "hedging" and picking a bright line for its own sake. ECF 23-5 Def. Ex. A (Rosen Dep.) at 104-107. He refused to stand behind his conclusion with a reasonable degree of engineering certainty, and he even admitted that there are tests (albeit cost-prohibitive for this case) that could sort out the source of damage which he did not perform. Id.

However, the remaining conclusion in Rosen's February 2015 report (that there is harm present in the Plaintiffs' home from both vibration and water damage, without apportioning relative degrees) is admissible. Defendant can cross-examine Rosen at trial on what Defendant characterizes as an inconsistency between Rosen's September 2014 and February 2015 reports on this issue.

Clark's damages estimate is also admissible. Defendant has not challenged the process by which Clark computed damages in this case. Defendant's main objection is that Clark's estimate cannot opine on what caused the damage to the exterior of the property. However,

Clark's report merely assumes that all damage to the exterior of Plaintiffs' residence is from vibration damage; it does not purport to establish causation. Clark arrived at this assumption independent of Rosen's February 2015 report, and Defendant can cross-examine Clark about the bases for it at trial. To the extent Plaintiffs cannot first prove that exterior damage resulted from vibration, Clark's report may be of little use to them. But to the extent they can, his report may provide a sound scientific basis for approximating how much damage they incurred.

### B. Motion for Summary Judgment

In light of the Court's ruling on the admissibility of expert testimony above, Plaintiffs have raised an issue of fact as to whether damage was caused by vibrations.[2] In examining the evidence in the light most favorable to Plaintiffs,[3] the Court cannot conclude as a matter of law that Allstate has not breached its contractual obligations.

Defendant's argument that Plaintiffs have failed to prove damages with reasonable certainty similarly fails for purposes of this Motion for Summary Judgment. "Ordinarily in insurance coverage disputes an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage, but if the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage if the insurer contends that it does." State Farm Fire & Cas. Co. v. Estate of

---

[2] The Court notes that Plaintiffs have nevertheless mischaracterized a report by Allstate's structural engineer Sinan Jawad in an attempt to bolster their case. Plaintiffs contend that Jawad conceded that vibration damage had occurred, but deemed it to be "insignificant" in extent. ECF 26-2 PSOF ¶ 10. Defendant counters that Plaintiffs are mischaracterizing the report and that Jawad said only that the vibrations Plaintiffs claim occurred were insignificant, without conceding that they caused harm. ECF 27 Def. Resp. to PSOF ¶ 10. The report itself states, "The insured reported that the vibrations from the construction in the street shook the house. He indicated that the vibrations did not cause any of the loose and hung items to shift, fall or break. This indicates that the vibrations from the construction were insignificant." ECF 24-16 Def. Ex. K at PAGE 2. The report also clearly states "The claimed damage to the house was not caused by vibrations from the construction in the street." Id. at PAGE 3.

[3] A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. Under Rule 56, the Court must view the evidence presented in the light most favorable to the non-moving party. Id. at 255.

Mehlman, 589 F.3d 105, 111 (3d Cir. 2009). Here, assuming the fact finder credits Plaintiffs' contention that vibration damage is present, Plaintiffs will have made that prima facie showing. Although neither party has briefed the issue, Defendant would then rely on an exclusion covering situations of damage from both covered and uncovered loss: at page 16, the policy notes, "[w]e do not cover loss to the property . . . when: 1) there are two or more causes of loss to the covered property; and 2) the predominant cause(s) of loss is [excluded as flooding damage per page 15]." ECF 24-11 Def. Ex. F.[4]

It may be that at trial, the fact finder disbelieves Plaintiffs' assertion that vibration damage is present. It may also be that Defendant can show that the predominant cause of any damage to the property was excluded under the policy. But the Court cannot decide those issues now, and consequently Defendant's Motion for Summary Judgment shall be denied.

**IV. Conclusion**

Rosen's February 2015 opinion that the water line on Plaintiffs' property provides a bright line causal break between damage caused by flooding and damage caused by vibration is not the product of reliable methodology. It is therefore inadmissible. The portion of Rosen's report clarifying that both vibration and water damage are present, as well as Clark's estimate of damages, do not suffer from the same defect and are thus admissible. Because issues of fact exist as to the cause of damage to the property, Defendant's Motion for Summary Judgment shall be denied.

An appropriate Order follows.

O:\CIVIL 15\15-231 stochel v. allstate\2015.12.09 Memo re Daubert and MSJ.docx

---

[4] The Court further notes that the policy's silence on which party must establish what the predominant cause is favors placing this burden on the Defendant. When an insurance contract's provisions are ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Com. Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006) (citations omitted).